ETHERIDGE et al. v. CAMPBELL.[*]
(No. 7370.)

(Court of Civil Appeals of Texas. Dallas. Oct. 16, 1915. Rehearing Denied Nov. 20, 1915.)

1. CONTINUANCE ⏝26—GROUNDS—ABSENCE OF WITNESSES—DILIGENCE.

The denial of a continuance sought because of the absence of witnesses who were outside the state and the procurement of whose testimony would cost several hundred dollars was not erroneous, where no diligence was shown to procure the testimony of such witnesses, though applicants set up as their excuse for want of diligence the failure of the adverse party to comply, until the case was called for trial, with an order requiring a bond for costs.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 74–93; Dec. Dig. ⏝26.]

2. TRESPASS TO TRY TITLE ⏝39—EVIDENCE OF TITLE—TRANSFER OF NOTES.

Where, in an action of trespass to try title, the question of title depended on whether the former owners of the property in controversy had transferred vendor's lien notes retained by them, it appeared that several years had elapsed, and that positive evidence relative to the details of such transfer was not obtain-

able, it was not error to admit the testimony of a witness that he was in the employ of such former owner when it made an assignment for the benefit of creditors, and that he assisted in preparing a statement of its assets, which statement was intended to be accurate and complete, and that, to the best of his recollection and understanding, the notes were not among such assets, but had been transferred by indorsement to the person through whom plaintiff claimed.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 54; Dec. Dig. ⬡═39.]

3. TRESPASS TO TRY TITLE ⬡═41 — TITLE — TRANSFER OF NOTES—SUFFICIENCY OF EVIDENCE.

Evidence in an action of trespass to try title, wherein the question of title depended on whether the former owners of the property had transferred, prior to making an assignment for the benefit of creditors, vendor's lien notes retained by them, *held* to show that the notes had been transferred.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. ⬡═ 41.]

4. VENDOR AND PURCHASER ⬡═261—LIEN—ASSIGNMENT.

Where a deed reserved a vendor's lien securing the purchase-money notes, and a trust deed authorizing appointment of trustee was executed as additional security, the action of the grantor's successor in interest in the land in appointing a trustee and the sale of the property under the trust deed after the notes had been transferred to a third person was unauthorized and conveyed no title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. ⬡═261.]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Trespass to try title by L. W. Campbell, Jr., against I. G. Etheridge and others. From judgment for plaintiff, defendants appeal. Affirmed.

Etheridge, McCormick & Bromberg, of Dallas, for appellants. Gilbert H. Irish and L. W. Campbell, both of Dallas, for appellee.

RAINEY, C. J. This is an action of trespass to try title to recover lots 1 and 2 in block 168, Dallas Land & Loan Company's addition No. 3 to Oak Cliff, now a part of the city of Dallas. The suit was instituted by appellee, and appellants filed a general denial and plea of not guilty. The cause was tried by the court without the intervention of a jury, and a judgment was rendered in favor of appellee, from which this appeal is taken.

[1] Error is assigned to the action of the court in overruling appellants' motion for continuance. The suit was filed in November, 1913. At the December term, 1913, an order was entered requiring appellee to give a bond for costs. No action to comply with this order by appellee was taken until the June term, 1914, when the case was called for trial, when the appellee announced ready. Whereupon the appellant moved to dismiss the case upon the ground that the rule for costs had not been complied with. Thereupon the appellee asked leave to be permitted to comply therewith, which was granted by the court, and a sufficient bond was then filed. The court declined to dismiss the case, and appellants then orally presented their motion for continuance for the want of the testimony of the two Hollingsworths, through whom appellee claims, by whom they could show that said lots had been purchased by them for a consideration in part of deferred payments, which contract they had abandoned; that it would cost several hundred dollars to procure the testimony of said parties, one of whom was in Toronto, Canada, and the other in Atlanta, Ga.; that appellants did not wish to incur the expense of procuring said testimony in view of the uncertainty of appellee making a cost bond. There was no diligence shown to procure said testimony, and the delay by appellee in complying with the rule requiring a bond for costs is not a sufficient excuse for want of diligence. Railway Co. v. Styron, 66 Tex. 421, 1 S. W. 161.

In the case just cited it was said by Mr. Stayton, J., that:

"The pendency of a contest as to the sufficiency of the affidavit in lieu of a cost bond was no excuse for the failure to use the necessary means to procure the evidence, and, besides, appellant knew that the appellee might comply with the rule for costs at any time by giving the proper cost bond."

The trial court did not err in overruling the motion for continuance.

[2, 3] The evidence shows that the two lots in controversy were on September 22, 1890, deeded to the Hollingsworth Bros. by the Dallas Land & Loan Company, the then owners, the consideration being $150 cash, and four notes executed by said Hollingsworth Bros., one for $100, payable in six months, and three for $250 each, payable, respectively, September 22, 1892, September 22, 1893, and September 22, 1894, said deed containing a reservation of the vendor's lien, and as additional security a deed of trust was executed to E. L. Snodgrass. The deed was signed by T. L. Marsalis, as president, and E. L. Snodgrass, as secretary, of said company, and the same was duly recorded in 1890. The Hollingsworth Bros. never paid said notes or either of them, but abandoned their contract and left the state. On June 9, 1891, the Dallas Land & Loan Company made to C. E. Bird, as assignee, a general assignment for the benefit of creditors. On July 21, 1892, C. E. Bird, assignee, deeded to T. L. Marsalis all of said property then held by him. On July 21, 1910, Marsalis deeded to David Scott the land in controversy. Scott on August 23, 1910, deeded to I. G. Etheridge. Marsalis and Scott on June 2, 1913, conveyed the lien and notes to Etheridge. Snodgrass, as trustee under the Hollingsworth Bros. deed of trust, resigned, and Etheridge appointed J. H. Addison as substitute trustee; such substitution being au-

thorized by said deed of trust. On July 1, 1913, Addison sold said lots at public sale, and on July 15, 1913, deeded same to I. G. Etheridge. On May 2, 1912, Hollingsworth Bros. deeded said lots to J. R. Campbell, and on September 23, 1913, J. R. Campbell deeded to L. W. Campbell, Jr. Appellee also holds a release from George J. Bryan, to whom it is claimed the Hollingsworth Bros. notes were transferred.

As to who owns the better title in this controversy, we think, must be determined from the evidence in relation to what disposition was made of the Hollingsworth Bros. notes. There is nothing to show that they were ever paid or in any way settled by the Hollingsworths. The deed from the Dallas Land & Loan Company having reserved a lien on the two lots to secure the payment of the notes, the superior title remained in said company, subject to said notes being paid or settled by said company disposing of them to another party. There is evidence to the effect that these lots were included in another tract traded to one George J. Bryan by the Dallas Land & Loan Company, and in said transaction with Bryan the Hollingsworth notes were settled. James A. McAleer, who at that time was a bookkeeper, cashier, and general office man of the Dallas Land & Loan Company, testified as follows:

"I remember the occasion when the Dallas Land & Loan Company made an assignment for the benefit of its creditors. I was in its employ at that time. The schedule of the assets and liabilities of that company was prepared in its office by Mr. E. L. Snodgrass and myself. We prepared it with the intention of having it strictly accurate. E. L. Snodgrass was then the secretary of that company. He lives in Dallas now. He did the principal work of preparing this schedule. I assisted him. I had charge of the notes that belonged to the Dallas Land & Loan Company. I had charge of the cash and the books. I have seen the schedule of the assets and liabilities on one or two occasions on record at the courthouse. I believe this schedule was accurate, and that it contained all the assets and liabilities of the company. Some seven or eight years ago I had an idea of buying those Hollingsworth notes if I could find the owner, but I could not find the owner. I did not know where he was, and no one seemed to know where he was; and I went to the courthouse to see if these notes on the lots were listed in the schedule, and whether those notes were shown as standing against the property at the time. I found no record of those notes in the schedule."

Being asked whether he was prepared to state whether he had any recollection on the subject or not as to why the notes were not listed, the witness responded:

" 'My recollection of the transaction was that that property where the Hollingsworth lots were situated was a part of the acreage conveyed to Geo. J. Bryan, and there was a settlement with Geo. J. Bryan in that sale or purchase with reference to the lots we had sold out of it, and in that settlement I believe that those notes and the cash received on those lots had been accounted for to him.' " "As to whether or not there was, in fact, the settlement I have just mentioned between Dallas Land & Loan Company and Geo. J. Bryan on his purchase of that part of the third addition, will say the settle-

ment—I saw it being prepared, and it was prepared in writing or in figures. That was a statement made in figures. That statement was made upon the basis of the amount of money coming to the Dallas Land & Loan Company from Geo. J. Bryan. Being asked to state if he remembered just what that statement consisted of, and who prepared it as nearly as he could remember, the witness responded: 'My recollection is that the instrument was prepared —the figures were prepared by Bryan T. Barry and T. L. Marsalis, and passed over to me for entry on the books.' The statement was made showing the amount of— to show the amount of the balance to be paid by Geo. J. Bryan after he had been given credit on the purchase money for the amount of money and notes on certain lots which had been sold prior to the acreage. As to what became of the Hollingsworth notes, my recollection and understanding was that they were turned over to Geo. J. Bryan by indorsement. As to what was done with the Hollingsworth notes, my memory at this time would not enable me to swear definitely what was done with them. I have merely stated my recollection as to what was done at the time, and which I believe to be true. That recollection is that the Hollingsworth notes were turned over to Geo. J. Bryan in a settlement of the account, coming from him to the Dallas Land & Loan Company, and giving him as a credit upon that amount. My recollection is that for six months prior to the time of the assignment made by the Dallas Land & Loan Company, on or about the 1st of January, 1891, that company was insolvent. I can give no reason for that, and it was that the officials of the Dallas Land & Loan Company, the president, had been considering about that time the advisability of making an assignment, and put it off as long as he could. At that time the company was struggling and borrowing money, but I would not say that it was insolvent at the time, but it was in a shaky condition. It was then borrowing money and struggling along. At that time attempts were made to sell land belonging to the company then known as the Midway addition, and now known as Rosemont, Winnetka, and the Annex. There were 300 acres, and a vigorous attempt was made to sell it in order to procure money for the upholding of the business of the Dallas Land & Loan Company. With reference to what the company was doing in the matter of its vendor's lien notes along the same time, will say there was a constant attempt to keep up the sale of the vendor lien notes, which was generally fairly successful until the financial crisis, caused, I believe, by the failure of Baring Bros. about that time, which caused a stringency of money, and it became almost impossible to sell vendor lien notes then."

This testimony was objected to by the appellants. Under the circumstances of this case, the length of time that had elapsed, etc., the court did not err in admitting the testimony. Taking said testimony as true, with the further testimony that they were not scheduled in the assignment made by the company for the benefit of creditors, and were not mentioned or specified in the deed by the assignee, Bird, conveying the property back to Marsalis, we conclude that said notes had passed out of the possession of said Land & Loan Company.

[4] If said company had disposed of said notes, the most that can be said of title in them is that it was held in trust for the owners of said notes, and the transfer of the lien and notes by Marsalis and Scott to Etheridge conveyed no title to the land, or the

notes, and the appointment by Etheridge of Addison as trustee and the sale under the trust deed was unauthorized and conveyed no title to the land. If the said notes had been transferred to Bryan, as the evidence indicates, under his release in favor of the Hollingsworth Bros. of his interest therein, as Hollingsworth Bros. deeded to Campbell the lots in controversy, Campbell has the better title, and the trial court did not err in so holding.

The judgment is affirmed.